NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


GREEN EMERALD HOMES, LLC,    )
                        )
       Appellant,      )
                        )
v.                       )     Case No. 2D17-2192
                        )
21ST MORTGAGE CORPORATION, a  )
Delaware corporation authorized to   )
transact business in Florida,       )
                        )
       Appellee.       )
_____)

Opinion filed June 7, 2019.

Appeal from the Circuit Court for
Hillsborough County; William P. Levens,
Senior Judge.

Mark P. Stopa of Stopa Law Firm, Tampa
(withdrew after briefing); Latasha Scott of
Lord Scott, PLLC, Tampa; Richard J.
Mockler of Stay In My Home, P.A., St.
Petersburg (substituted as counsel of
record); and Angela L. Leiner of The Law
Office of Angela L. Leiner, P.A., St.
Petersburg, for Appellant.

Leslie S. White and Tim W. Sobczak of
Dean, Mead, Egerton, Bloodworth,
Capouano & Bozarth, P.A., Orlando, and
Dariel Abrahamy of Greenspoon Marder,
P.A., Boca Raton, for Appellee.

SALARIO, Judge.

Green Emerald Homes, LLC appeals from a final judgment of foreclosure in favor of 21st Mortgage Corporation. Although Green Emerald was not a party to the mortgage the judgment foreclosed, it was the owner of the property subject to the mortgage at the time the complaint and lis pendens were filed and was a named defendant in the case. 21st Mortgage argues that we must affirm because, as a nonparty to the mortgage who purchased the property after the mortgage was recorded, Green Emerald lacks standing to dispute the legal sufficiency of its proof of the amount due, an element of the foreclosure cause of action. We reject that argument, find 21st Mortgage's proof of the amount due legally insufficient, and reverse and remand for entry of a judgment of involuntary dismissal.

I.

In 2007, Rosalie Reid executed a note in favor of American Residential Lending, Inc. evidencing a debt of $186,000 and secured by a mortgage on real property. In 2014, 21st Mortgage filed a civil action to foreclose the mortgage based on Ms. Reid's default of her payment obligations on the note. A lis pendens was filed on the same day. In addition to Ms. Reid, the foreclosure complaint and lis pendens named Green Emerald as a defendant and alleged that Green Emerald was the owner and was in possession of the property subject to its mortgage. The complaint requested a judgment "foreclosing the Defendants' interest in the Property made the subject of the Mortgage." In sum, then, the complaint named Green Emerald as a defendant and sought a judgment foreclosing its ownership interest in the mortgaged property.

- 2 -

Ms. Reid failed to answer the complaint, and she was ultimately the subject of a clerk's default. Green Emerald did file an answer in which it denied the bulk of 21st Mortgage's allegations and asserted several affirmative defenses. It admitted, however, 21st Mortgage's allegation that Green Emerald was the owner of the property and was then in possession of it. From there, the case proceeded in the more-or-less normal course to a nonjury trial on 21st Mortgage's claim for foreclosure.

At the beginning of trial, 21st Mortgage challenged Green Emerald's "standing" to defend the lawsuit on the basis that it was not a party to the note and mortgage. It argued that because Green Emerald was not a party to the note and mortgage, it "should not be able to contest practically anything here" and that although Green Emerald had pleaded defenses, "there's no standing for this particular defendant." It asked the court to strike Green Emerald's defenses, to hold that it was estopped from defending the case, or "otherwise provide extreme light, little weight to any arguments or objections here today."

The trial court asked how Green Emerald came into possession of the property, and Green Emerald replied that it had "obtained title to the property and is the record owner." Green Emerald reminded the court that its status as the owner of the property was established by the pleadings for purposes of the action. See, e.g., Gen. Accident Fire & Life Assurance Corp. v. Means, 362 So. 2d 135, 136 (Fla. 2d DCA 1978) (holding that there was "no issue" as to coverage under an insurance policy where coverage was alleged in the complaint and admitted in the answer). Throughout the case, no one ever disputed that Green Emerald owned the mortgaged property at the time of the filing of the foreclosure complaint and lis pendens.

21st Mortgage's lone witness at trial was Whit Reed, a "legal team leader" for 21st Mortgage who worked with loans in default. Through this witness, 21st Mortgage admitted the original note and mortgage, default letter, and payment history. Mr. Reed also testified about a proposed final judgment 21st Mortgage had tendered to the trial court. That testimony revealed that 21st Mortgage had included in the amount-due finding of the proposed final judgment $77,270 more in principal indebtedness than was reflected by the trial evidence. Mr. Reed testified that the principal increase was most likely the result of a modification agreed to by Ms. Reid and a prior loan servicer. He further testified that a change in principal like the one reflected in the proposed final judgment could not be accomplished without a separate written agreement and, therefore, that there had to be a written agreement on that point somewhere, but that he did not have it with him. 21st Mortgage never disputed or clarified Mr. Reed's testimony. Nor did it produce the likely loan modification (or any other document) or offer any other admissible evidence of its terms.

Green Emerald moved for an involuntary dismissal at the close of evidence. It argued, among other things, that 21st Mortgage failed to provide sufficient evidence of the amount due under the note—specifically, that without any evidence of the loan modification Mr. Reed testified to, 21st Mortgage could not prove the amount due. 21st Mortgage responded that Green Emerald lacked standing to challenge the amount due because it was not a party to the note or mortgage. The trial court denied Green Emerald's motion but—recognizing the lack of evidence of the principal amount contained in the proposed final judgment—removed the additional $77,270, and it entered a judgment in favor of 21st Mortgage that foreclosed Green Emerald's interests

in the property and directed that the property be sold at a public sale. Green Emerald timely filed a notice of appeal.

II.

Green Emerald argues that we should reverse because 21st Mortgage failed to adduce legally sufficient proof of the amount due under the note and mortgage. We review the trial court's legal conclusions de novo and its factual findings for competent substantial evidence. See Corya v. Sanders, 155 So. 3d 1279, 1283 (Fla. 4th DCA 2015) ("After a nonjury trial, review of trial court decisions based on legal questions are reviewed de novo and those based on findings of fact from disputed evidence are reviewed for competent, substantial evidence.").

A.

As it did in the trial court, 21st Mortgage maintains on appeal that Green Emerald lacks standing to challenge the sufficiency of the evidence of the amount due under the note because it was not a party to the note and mortgage. The amount due under the note is an element of the foreclosure cause of action. See Ernest v. Carter, 368 So. 2d 428, 429 (Fla. 2d DCA 1979); Liberty Home Equity Sols., Inc. v. Raulston, 206 So. 3d 58, 60 (Fla. 4th DCA 2016); Bank of Am., N.A. v. Delgado, 166 So. 3d 857, 859 (Fla. 3d DCA 2015). The notion that a party named as a defendant in a civil action has no standing to require that the plaintiff prove the elements of its cause of action is a novel one, and we have been unable to find any other area where the law says that a named defendant must have standing to require that the plaintiff prove its case.

Requiring a named defendant to have standing to hold the plaintiff to its proof is quite out of line with the conventional understanding of standing that prevails in civil litigation. Standing is usually regarded as an attribute the claimant—not the

- 5 -

defendant—must possess before it can open the courthouse doors and have its suit decided.  See, e.g., Rogers & Ford Constr. Corp. v. Carlandia Corp., 626 So. 2d 1350, 1352 (Fla. 1993) ("The determination of standing to sue concerns a court's exercise of jurisdiction to hear and decide the cause pled by a particular party."); Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1284-85 (Fla. 2d DCA 2005) (explaining that standing is an obligation of the claimant in a civil case and stating that "the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed").  The requirement of standing ensures that a claimant seeking a judgment from a court has a "sufficient interest in the outcome of litigation which will warrant the court's entertaining it."  Gen. Dev. Corp. v. Kirk, 251 So. 2d 284, 286 (Fla. 2d DCA 1971).  As applied to foreclosure cases, standing has been deemed to require (loosely stated) that the claimant seeking a foreclosure judgment have the right to enforce the note secured by the mortgage it seeks to foreclose.  See § 673.3011, Fla. Stat. (2014); Verizzo v. Bank of N.Y. Mellon, 220 So. 3d 1262, 1264 (Fla. 2d DCA 2017).

Our court has not previously—in foreclosure cases or otherwise—restricted a named defendant's right to demand that the plaintiff prove its cause of action based on a case-by-case or issue-by-issue analysis of the defendant's standing to defend.[1]  That would raise serious concerns of procedural due process.  Consider the

---

[1]We recognize that a foreclosure action is an action in rem or quasi in rem. See Aluia v. Dyck-O'Neal, Inc., 205 So. 3d 768, 773 (Fla. 2d DCA 2016).  We also recognize that in some other proceedings against property, we have required a party who asserts an interest in the property to establish "standing."  See, e.g., In re Forfeiture of: $7464 + 2002 Cadillac Escalade, Identification No. 3GYEK63N02G222802, 872 So. 2d 1017, 1018 (Fla. 2d DCA 2004) (holding that only persons who have standing can participate in a forfeiture proceeding and that standing must be based on a claim to ownership of the property).  Without undertaking to detail

circumstances here. It is undisputed in this case that Green Emerald owns the property secured by the mortgage 21st Mortgage seeks to enforce. A titleholder is regarded by the law as an indispensable party to a foreclosure action, and 21st Mortgage doubtless named Green Emerald in the foreclosure complaint in this case for that reason. See Oakland Props. Corp. v. Hogan, 117 So. 846, 848 (Fla. 1928) ("One who holds the legal title to mortgaged property is not only necessary, but is an indispensable, party defendant in a suit to foreclose a mortgage."); U.S. Bank Nat'l Ass'n v. Bevans, 138 So. 3d 1185, 1188 (Fla. 3d DCA 2014) (holding that the legal titleholder is an indispensable party to a foreclosure complaint without whom the litigation cannot proceed). Before Green Emerald could be stripped of its ownership of the subject property—the all-but-certain effect of the foreclosure judgment 21st Mortgage sought and obtained—it was unquestionably entitled to procedural due process. See Dep't of Law Enf't v. Real Prop., 588 So. 2d 957, 964 (Fla. 1991) ("Property rights are among the basic substantive rights expressly protected by the Florida Constitution."); Adhin v. First Horizon Home Loans, 44 So. 3d 1245, 1254 n.6 (Fla. 5th DCA 2010) (explaining that due process protects the property interests of a subsequent purchaser of mortgaged property); Metro. Dade Cty. v. Sokolowski, 439 So. 2d 932, 934 (Fla. 3d DCA 1983) ("[A] property interest falls within the protections of procedural due process.").

In the context of civil litigation, "[d]ue process mandates that in any judicial proceeding, the litigants must be afforded the basic elements of notice and [an] opportunity to be heard." Shlishey the Best, Inc. v. CitiFinancial Equity Servs., Inc., 14

---

all of the ways in which a foreclosure proceeding may be different, we stress here that Green Emerald was a named defendant in the foreclosure suit and a judgment was sought against it, which gives it, as shown in the text, a due process right to defend the action.

So. 3d 1271, 1273 (Fla. 2d DCA 2009) (quoting E.I. DuPont De Nemours & Co. v. Lambert, 654 So. 2d 226, 228 (Fla. 2d DCA 1995)).  The right to be heard "includes more than simply being allowed to be present and to speak"; it includes the right to meaningfully introduce evidence, cross-examine witnesses, and be heard on questions of law.  Vollmer v. Key Dev. Props., Inc., 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007); see also Baron v. Baron, 941 So. 2d 1233, 1236 (Fla. 2d DCA 2006) (holding that a father had a due process right to introduce evidence, cross-examine witnesses, and be heard on questions of law with respect to a mother's emergency motion to place their child in a therapeutic boarding school); Glary v. Israel, 53 So. 3d 1095, 1098-99 (Fla. 1st DCA 2011) (holding that a nonparty who was subject to an order compelling it to turn over funds to a receiver had a due process right to present evidence, cross-examine witnesses, and be heard on questions of law); Brinkley v. County of Flagler, 769 So. 2d 468, 472 (Fla. 5th DCA 2000) (holding that the owner of animals subject to a forfeiture order had a due process right to present evidence, cross-examine witnesses, and be heard on questions of law).  Under the conception of standing asserted by 21st Mortgage, Green Emerald—or anyone else who purchases real property subsequent to the recording of a mortgage encumbering that property, for that matter—would not receive any of these long-recognized elements of procedural due process.  It would be forced largely if not entirely to sit silent, regardless of the insufficiency of the plaintiff's proof, while the property to which it holds title is foreclosed and sold at auction.

That would be a tough pill to swallow with any named defendant in a civil suit, and it is even more so here in light of a titleholder's status as an indispensable party to a foreclosure suit.  See Bank of N.Y. Mellon v. Burgiel, 248 So. 3d 237, 238 n.1 (Fla. 5th DCA 2018); Citibank, N.A. v. Villanueva, 174 So. 3d 612, 613 (Fla. 4th DCA

2015). An indispensable party is one who is "so essential to a suit that no final decision can be rendered without their joinder." Hertz Corp. v. Piccolo, 453 So. 2d 12, 14 n.3 (Fla. 1984). As we explained in Department of Revenue ex rel. Preston v. Cummings, 871 So. 2d 1055, 1058 (Fla. 2d DCA 2004), an indispensable party is one "whose interest will be substantially and directly affected by the outcome of the case" or "whose interest in the subject matter is such that if he is not joined[,] a complete and efficient determination of the equities and rights between the other parties is not possible." (first quoting Amerada Hess Corp. v. Morgan, 426 So. 2d 1122, 1125 (Fla. 1st DCA 1983); then quoting Allman v. Wolfe, 592 So. 2d 1261, 1263 (Fla. 2d DCA 1992)).

If the owner of property subject to a mortgage foreclosure action is so important as to be indispensable to a just adjudication, due process surely requires that the owner be permitted to defend the suit. See Ezem v. Fed. Nat'l Mortg. Ass'n, 153 So. 3d 341, 345 (Fla. 1st DCA 2014) (holding that a nonparty to a foreclosure action claiming to be a co-owner of the property subject to that action, although not a party to the mortgage securing it, was entitled to intervene because "[a]t the minimum, he is entitled to a hearing on his claimed interest"); cf. Villanueva, 174 So. 3d at 614 (holding that a foreclosure judgment was void where the subsequent purchasers of the subject property were not joined to the foreclosure litigation). If only the party to the note and mortgage is relevant, and the titleholder is nothing more than a set piece with no right to defend of any substance, there is no point in making the final resolution of a mortgage foreclosure action contingent on the titleholder being joined to the litigation.

In sum, then, a titleholder named as an indispensable party in a foreclosure suit has a due process right to defend the suit in the same way any other named party to civil litigation has a due process right to defend. It is not as a general

- 9 -

proposition required to demonstrate that it has "standing" to assert a particular issue in the way of defense to the plaintiff's claim for foreclosure.

B.

There are, however, two aspects of substantive foreclosure law that are commonly asserted to limit the types of issues and defenses a subsequent purchaser may raise. The first is that that an owner who acquired title to the property after a facially valid mortgage on that property has been recorded is estopped from disputing the validity of that mortgage. See CCM Pathfinder Palm Harbor Mgmt., LLC v. Unknown Heirs, 198 So. 3d 3, 7 (Fla. 2d DCA 2015) (holding that a subsequent purchaser "is 'estopped from contesting the validity of the mortgage' " (quoting Eurovest, Ltd. v. Segall, 528 So. 2d 482, 483 (Fla. 3d DCA 1988))). The reason the law imposes this estoppel is that a purchaser subsequent to the recorded mortgage has constructive notice of the mortgage and could elect to assume the mortgage as a part of the purchase. Eurovest, 528 So. 2d at 483. When it declines that election, the purchaser "may not defend . . . on grounds which would be unavailable to him had he assumed payment of the mortgage." Id. (holding that a subsequent purchaser was estopped from asserting the affirmative defense of want of consideration); see also Irwin v. Grogan-Cole, 590 So. 2d 1102, 1104 (Fla. 5th DCA 1991).

The second frequently cited rule that limits the kinds of defenses a subsequent purchaser can assert is that a subsequent purchaser who is not a party to the mortgage contract generally cannot assert rights under the contract that belong to the parties. See LaFaille v. Nationstar Mortg., LLC, 197 So. 3d 1246, 1247 (Fla. 3d DCA 2016); Clay Cty. Land Trust No. 08-04-25-0078-014-27, Orange Park Tr. Servs.,

- 10 -

LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 152 So. 3d 83, 84 (Fla. 1st DCA 2014).[2] This is an extension to the mortgage foreclosure context of the hornbook contract law rule that a person who is neither a party to nor an intended third-party beneficiary of a contract has no rights under the contract to enforce. See Greenacre Props., Inc. v. Rao, 933 So. 2d 19, 23 (Fla. 2d DCA 2006) ("As a general rule, a person who is not a party to a contract cannot sue for a breach . . . even if the person receives some incidental benefit from the contract. A third party must establish that the contract either expressly creates rights for them . . . or that the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member."). The application of this general contract principle in the mortgage foreclosure context makes perfect sense because "we are to interpret and apply the provisions of mortgages the same way we interpret and apply the provisions of any other contract." Green Tree Servicing, LLC v. Milam, 177 So. 3d 7, 12-13 (Fla. 2d DCA 2015).

The cases have sometimes loosely characterized the substantive rules that subsequent purchasers are estopped from contesting the validity of facially valid mortgages and cannot assert contract rights they do not own as related to a foreclosure defendant's "standing" to defend. See, e.g., Rouffe v. CitiMortgage, Inc., 241 So. 3d 870, 872 (Fla. 4th DCA 2018); Clay Cty. Land Tr., 152 So. 3d at 84. But we should

---

[2]These cases involve allegations that a foreclosure plaintiff failed to comply with the default notice requirement of paragraph twenty-two of the standard residential mortgage contract. Because compliance with paragraph twenty-two is a condition precedent to a foreclosure suit, Konsulian v. Busey Bank, N.A., 61 So. 3d 1283, 1284-85 (Fla. 2d DCA 2011), there might be an argument that the failure to comply with paragraph twenty-two may be asserted by a named defendant to the suit that is not a party to the mortgage. By citing these cases, we do not express an opinion on that question.

recognize these rules for what they are: limitations on the rights of particular parties in the foreclosure process imposed by substantive law. Their scope is confined to the limited subject areas they cover—disputes as to the validity of mortgages and the rights of nonparties to enforce contract provisions. On their face, they do not represent a determination that a subsequent purchaser lacks standing to contest practically anything a plaintiff might assert in a foreclosure case or that a subsequent purchaser must tie each and every matter it asserts by way of defense to some interest that gives it standing to assert that specific matter.[3] See Wilmington Tr., N.A. v. Alvarez, 239 So. 3d 1265, 1266 n.1 (Fla. 3d DCA 2018) (rejecting the argument that a subsequent purchaser "lack[ed] standing" to assert the statute of limitations as a defense to a foreclosure case); 3709 N. Flagler Drive Prodigy Land Tr. v. Bank of Am., N.A., 226 So. 3d 1040, 1042 (Fla. 4th DCA 2017) (holding that a subsequent purchaser may challenge a foreclosure plaintiff's standing to foreclose because otherwise "a subsequent purchaser would never have the ability to defend against the taking of a bona fide interest in the property through a foreclosure sale").

Green Emerald's insistence that 21st Mortgage prove the required element of the amount due does not implicate either the validity of the mortgage or an

---

[3]We do not mean to imply that these are the only two respects in which the law might treat any specific purchaser subsequent to the recording of a mortgage differently from the borrower under the note and mortgage or from another type of subsequent purchaser, such as one who acquires title after the filing of a foreclosure action. It is possible, for example, that the law might recognize legally consequential distinctions in the facts and circumstances under which a subsequent purchaser took title that the generic use of the term "subsequent purchaser" might mask. We discuss the two rules identified in the text because they are the rules upon which 21st Mortgage relies and because they are the ones discussed in the Florida cases addressing the standing of subsequent purchasers. We express no opinion on any other possibility.

effort to enforce provisions in a mortgage contract to which Green Emerald is not a party. Green Emerald is not saying that 21st Mortgage's mortgage is invalid; it is saying that where the plaintiff's own witness has testified as to the existence of a loan modification as the basis for its computation of the amount due, proof of that agreement's terms is indispensable to proof of the amount due.[4] Nor is Green Emerald trying to assert any right that inured only to Ms. Reid's benefit under the mortgage contract; it is asking the court to determine whether 21st Mortgage's proof of the amount due under the note is legally sufficient to get a judgment that forecloses its interest in the mortgaged property. This is litigation defense 101—requiring the claimant to prove the elements of its case—not the assertion of some right that Green Emerald either does not have or is estopped by law from asserting.

We recognize that we have decided cases addressing a subsequent purchaser's ability to intervene in a pending foreclosure action that hold that there is no right to intervene and that those cases sometimes speak in terms of the purchaser's standing. Those cases have no bearing with regard to a subsequent purchaser who took title prior to the foreclosure litigation and has been named as a defendant in that litigation. First and foremost, those cases involve subsequent purchasers who acquired

---

[4]This distinguishes the cases on which 21st Mortgage relies, all of which involved the assertion of some defense that went to the validity of the mortgage or its express terms. See Wells Fargo Bank, N.A. v. Rutledge, 230 So. 3d 550, 552 (Fla. 2d DCA 2017) (holding that a third-party purchaser lacked standing to argue that the borrower's signature had been forged on the note and mortgage); CCM Pathfinder, 198 So. 3d at 7 (holding that a subsequent purchaser was bound by a provision in the mortgage contract waiving the statute of limitations for a foreclosure action); LaFaille, 197 So. 3d at 1247 (stating that subsequent titleholders could not assert a contract right that belonged only to the parties to the mortgage); Eurovest, 528 So. 2d at 483 (holding that a third-party purchaser was estopped from arguing that the mortgage was procured by fraud and without consideration).

the mortgaged property <u>after the foreclosure complaint and lis pendens were filed</u>, not before.  <u>See, e.g.</u>, <u>Bank of N.Y. Mellon for Certificateholders CWALT, Inc. v. HOA Rescue Fund, LLC</u>, 249 So. 3d 731, 733-34 (Fla. 2d DCA 2018); <u>Ventures Tr. 2013-I-H-R v. Asset Acquisitions & Holdings Tr.</u>, 202 So. 3d 939, 942-43 (Fla. 2d DCA 2016); <u>Bonafide Props. v. Wells Fargo Bank, N.A.</u>, 198 So. 3d 694, 695 (Fla. 2d DCA 2016); <u>Market Tampa Invs., LLC v. Stobaugh</u>, 177 So. 3d 31, 32 (Fla. 2d DCA 2015).  Because they purchase property with constructive if not actual notice of the fact that the property is subject to a foreclosure suit, the law treats purchasers pendente lite—pending litigation—accordingly and holds that they have no right to insert themselves into the pending litigation to which they were not previously a party.  <u>See</u> <u>Rutledge</u>, 230 So. 3d at 552 ("Rutledge is a subsequent purchaser who was at least constructively aware of Wells Fargo's recorded lis pendens when he purchased the property."); <u>Bonafide Props.</u>, 198 So. 3d at 695 (affirming an order denying a subsequent purchaser's motion to intervene because "it is undisputed that [it] acquired its rights to the property four years after Wells Fargo initiated the foreclosure action and filed its notice of lis pendens"); <u>see also</u> <u>Whitburn, LLC v. Wells Fargo Bank, N.A.</u>, 190 So. 3d 1087, 1091 (Fla. 2d DCA 2015) (holding that purchaser subsequent to lis pendens "took the property subject to the outcome of the litigation . . ., including the foreclosure sale").  In contrast to a purchaser pendente lite, a party who owns the mortgaged property at the time the foreclosure action and lis pendens are filed is an <u>indispensable party</u> to the litigation.  <u>Bevans</u>, 138 So. 3d at 1188.  Our court has (rightly) never held that a subsequent purchaser in that situation lacks the right to insist that the plaintiff that has haled the purchaser into court prove the elements of its case.

Furthermore, the questions on a motion to intervene are whether a nonparty has an interest in litigation that entitles it to intervene and whether as a matter of judicial discretion it should be permitted to intervene. See generally Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507-08 (Fla. 1992). One major consideration applicable to the intervention by purchasers pendente lite is that allowing intervention invites the unnecessary protraction of litigation by a nonparty who knew full well at the time it took title that the property was in foreclosure. See Bymel v. Bank of Am., N.A., 159 So. 3d 345, 347 (Fla. 3d DCA 2015) ("Allowing [a purchaser pendente lite] to intervene would unnecessarily prolong the foreclosure action."). To say that a nonparty to litigation does not have an interest sufficient to justify intervention because of when they acquired their interest or that intervention is not advisable under the facts out of concern for delay says nothing about whether a party named as a defendant by the plaintiff and actually joined in the litigation should be permitted to defend itself fully.

We also recognize that other courts have held that a subsequent purchaser has "standing" to contest the amount due because the computation of the amount due bears directly on its right of redemption—i.e., its right to cure the mortgagor's indebtedness by paying everything that is due. See Clay Cty. Land Tr., 152 So. 3d at 85; see also § 45.0315, Fla. Stat. (2014); Beauchamp v. Bank of N.Y., 150 So. 3d 827, 828 (Fla. 4th DCA 2014). But that analysis proceeds from the assumption, which we think unwarranted, that a subsequent purchaser lacks standing to do anything in defense of a foreclosure case unless it can relate it to a right or interest specific to subsequent purchasers. As we have explained in this opinion, a subsequent purchaser has an ownership interest in property and as a matter of due process is entitled to defend in accord with its rights and obligations under applicable substantive law.

Accordingly, we hold that as the owner of the mortgaged property who took title before the filing of the lis pendens, Green Emerald was entitled to insist that 21st Mortgage present competent substantial evidence of the amount due under the note.[5]  We now turn to whether it did so.

---

[5]The dissent says that a subsequent purchaser receives all the process it is due when its participation is limited to protecting its statutory right of redemption because (1) a subsequent purchaser takes title subject to the mortgage and (2) some subsequent purchasers take advantage of borrowers in distressed situations.  As to the first point, the law already limits the subsequent purchaser's rights on the grounds that it takes title subject to the mortgage; it holds that a subsequent purchaser is estopped from disputing the validity of a facially valid mortgage.  As we have shown, that principle does not translate into the rule the dissent wants—namely, that a subsequent purchaser, even though it owns the property and is named as a defendant, can be precluded from saying or doing anything in defense of a foreclosure action unless it can convince a judge that its action is tied to the right of redemption.  As to the second point, if bad behavior by some subsequent purchasers is a problem, the extent to which it demands action and what action it demands are policy questions properly addressed to the legislature and not questions that we as law-trained judges have either the technical competence or the information-gathering tools to answer.  See Bonafide Props., 198 So. 3d at 698 (Altenbernd, J., concurring) (noting that the practice of some subsequent purchasers buying distressed properties and putting rent-paying tenants in them likely has "a measure of good . . . that should be preserved" and "a measure of bad that ought to be regulated or prohibited" and explaining that "[t]his court is not a proper forum to make these determinations or to establish any needed rule of law").  The dissent concludes by saying that our decision "strips 21st Mortgage of its security under the guise of due process."  That is not a reasonable characterization; at most, we have required that 21st Mortgage do what virtually any other plaintiff who seeks a judgment against virtually any other defendant must do—prove the elements of its case.  And although we cannot preemptively decide the issue, we note that because the law treats each payment default under a note and mortgage as a separate event for res judicata purposes, the smart money says that 21st Mortgage can and will file a new foreclosure action (as soon as tomorrow, if it wants) based on payment defaults subsequent to those involved here.  See Provident Funding Assocs., L.P. v. MDTR, 257 So. 3d 1114, 1118 (Fla. 2d DCA 2018) (holding that a judgment in an initial foreclosure action did not bar a subsequent action based on different payment defaults under the same note and mortgage where "[t]he final judgment in the first foreclosure action did not make any determination that would invalidate the note and mortgage or preclude [the plaintiff] from ever suing upon the note and mortgage" and relying on Singleton v. Greymar Associates, Inc., 882 So. 2d 1004 (Fla. 2004), in support of that proposition).

III.

In a foreclosure case, the amount due under the note must be proved by competent substantial evidence. Wolkoff v. Am. Home Mortg. Servicing, Inc., 153 So. 3d 280, 281 (Fla. 2d DCA 2014); E & Y Assets, LLC v. Sahadeo, 180 So. 3d 1162, 1163 (Fla. 4th DCA 2015). 21st Mortgage's failure to produce a loan modification its own witness testified must have existed left it unable to meet that burden.

As we explained in Wolkoff, a foreclosure plaintiff typically proves the amount due "through the testimony of a competent witness who can authenticate the mortgagee's business records and confirm that they accurately reflect the amount owed on the mortgage." 153 So. 3d at 281 (emphasis added). Here, Mr. Reed's testimony established without contradiction that at some point a document, most likely a loan modification agreement, was executed that changed the terms of the original note. Without the loan modification or other admissible evidence of its contents, it is not possible to determine the basis for 21st Mortgage's computation of the principal, interest, or other charges folded into the total amount due in the final judgment because the record is simply silent on what (after modification) the borrower's obligations in this regard were. Cf. Werb v. Green Tree Servicing, LLC, 231 So. 3d 483, 484 (Fla. 4th DCA 2017) (holding that the bank failed to prove the amount due where its only evidence was a witness's testimony that the figure in a proposed final judgment, which had not been admitted into evidence, comported with the bank's records; but it did not show how interest and additional fees were calculated). The trial court's reduction of the claimed principal amount due did not cure this problem; the fact remains that there was no evidentiary basis to determine what the borrower in fact owed. We note that on

- 17 -

appeal, not even 21st Mortgage has argued that its evidence of the amount due was legally sufficient.

IV.

21st Mortgage failed to present legally sufficient evidence of the amount due. We reverse and remand for the trial court to enter an order of involuntary dismissal, which was the remedy Green Emerald properly sought in the trial court.[6] See Tracey v. Wells Fargo Bank, N.A., 264 So. 3d 1152, 1161-65 (Fla. 2d DCA 2019) (holding that a new trial is generally improper upon a reversal based on the insufficiency of the evidence absent exceptional circumstances and harmonizing this court's prior opinions on the scope of remand under this rubric).

Reversed and remanded with instructions.

ROTHSTEIN-YOUAKIM, J., Concurs.
VILLANTI, J., Concurring in part and dissenting in part.

VILLANTI, Judge, Concurring in part and dissenting in part.

I concur with that portion of the majority's opinion that reverses the damages awarded in the final judgment because it is clear that 21st Mortgage failed to carry its burden of proof as to the amount of the judgment to which it was entitled.

---

[6]We note that 21st Mortgage has not argued that there are components of the amount due that were sufficiently proved notwithstanding the absence of evidence with regard to the loan modification to which its witness testified. See, e.g., Boyette v. BAC Home Loans Servicing, LP, 164 So. 3d 9, 10 (Fla. 2d DCA 2015).

- 18 -

However, I cannot concur in the remainder of the opinion because, in my view, Green Emerald received all the process it was due.

It is true, as the majority points out, that Green Emerald held legal title to the property on the date that 21st Mortgage filed its foreclosure complaint. However, it is also clear from the record that Green Emerald took its title subject to 21st Mortgage's prior recorded mortgage. Green Emerald had constructive, if not actual, notice of the recorded mortgage when it took title; yet it elected not to assume the mortgage, and it undertook no efforts to satisfy the mortgage debt so as to obtain clear title. Under Florida law, it is presumed that a buyer with notice of the mortgage took the mortgage debt into consideration in its purchase price of the property. See Spinney v. Winter Park Bldg. & Loan Ass'n, 162 So. 899, 903 (Fla. 1935) (quoting Ala.-Fla. Co. v. Mays, 149 So. 61, 64 (Fla. 1933)). And the titleholder has the right to either pay the mortgage debt or redeem the property rather than lose it to foreclosure. See § 45.0315, Fla. Stat. (2017) ("At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor."). If Green Emerald wanted to obtain clear title to the property, it simply needed to exercise its right to pay the mortgage debt that it knew existed when it took title to the property. Hence, contrary to

- 19 -

what the majority asserts, it was not "all but certain" that Green Emerald would be stripped of its ownership of the property by any foreclosure judgment 21st Mortgage sought and obtained. That was all but certain only if Green Emerald had no intention of ever paying the mortgage debt that it knew encumbered the property when it took title.

Of course, we know that many companies were formed in the wake of Florida's foreclosure crisis to do just that—take title from distressed homeowners at little to no expense, put rent-paying tenants in those properties, and then collect rents while not paying the mortgages until such time as the bank could foreclose. See, e.g., Mortgages: Most Common Forms of Fraud, Mortgage & Real Estate Executives Rpt. (Feb. 15, 2019). Many of these companies spent portions of their rent collections actively fighting foreclosure proceedings brought by banks that held purchase-money mortgages from the now-absent former homeowners with no intention of ever paying a dime toward the mortgage debt that they knew encumbered the properties. In my view, the broad sweep of the majority's opinion will simply encourage such companies to continue to take advantage of desperate homeowners.

We have previously held that "[t]he extent of procedural due process protection varies with the character of the interest and nature of the proceeding involved." Carmona v. Wal-Mart Stores, E., LP, 81 So. 3d 461, 464 (Fla. 2d DCA 2011) (quoting Carillon Cmty. Residential v. Seminole County, 45 So. 3d 7, 9 (Fla. 5th DCA 2010)). We also noted that due process does not lend itself to a single, unchanging test. Instead, courts must "consider the facts of the particular case to determine whether the parties have been accorded that which the state and federal constitutions demand." Id. The majority recognizes that a third party who takes title after the foreclosure complaint and lis pendens have been filed does not have the right to

challenge any aspect of the foreclosure proceeding. I would hold that the same is true for a third party who takes title <u>before</u> a foreclosure complaint is filed, who has notice of the prior-recorded mortgage, and who fails or refuses to assume that mortgage or ensure that it has been satisfied. The title-taker is charged with notice of the mortgage in either situation, and we should not "reward" those who rush in and secure title from distressed homeowners before a foreclosure complaint is filed by providing them with more extensive due process protections. Regardless of the filing of a complaint, the legal interest held is the same—legal title subject to the prior-recorded mortgage and the bank's concomitant right to foreclose if the mortgage is not paid. Therefore, since the scope of the interest is the same, the scope of the due process protections should be the same.

Further, as I suggested two years ago, I continue to believe that it would behoove the legislature to amend the foreclosure statutes to require that any foreclosure defendant wishing to raise any defense other than payment make the payments due under the existing note and mortgage into the registry of the court. <u>See</u> <u>Shaffer v. Deutsche Bank Nat'l Tr.</u>, 235 So. 3d 943, 947 (Fla. 2d DCA 2017) (Villanti, J., concurring specially). Such a procedure would go a long way toward ensuring that the due process rights of both the bank and the holder of legal title to the property are protected during foreclosure litigation.

In sum, I agree with the majority that Green Emerald had the due process right to challenge the amount of the foreclosure judgment because the amount of that judgment directly affected Green Emerald's statutory right of redemption. However, I disagree with the remainder of the decision, which essentially strips 21st Mortgage of its

security under the guise of due process.  Therefore, I would reverse only the damages

awarded in the final judgment and remand for further proceedings on that issue alone.